## AUTOMOBILE FINANCE COMPANY v MUNDAY et

Ohio Appeals, 1st Dist, Hamilton Co.

No. 5715. Decided Feb. 26, 1940.

Benjamin S. Schwartz, Cincinnati, and Joseph Schwartz, Cincinnati, for appellant.

Franks & Franks, Cincinnati, for appellees.

### OPINION

By ROSS, J.

Appeal on questions of law from a judgment of the Court of Common Pleas of Hamilton County, affirming a

judgment of the Municipal Court of Cincinnati, Ohio, in favor of the defendant.

George Munday was one of two partners of a partnership doing business as the Northside Auto Sales Co.

On November 12, 1937, Munday executed a chattel mortgage upon an automobile to the partnership, of which he was a member. This vehicle had been purchased from the L. T. Patterson Company, and the title at the time the mortgage was executed was in the Northside Auto Sales Company. Munday, as far as the record shows never was given any indicia of ownership, or even had any possession of the automobile separate and distinct from that of the partnership, of which he was a member.

On the same day Munday executed a mortgage to the Northside Auto Sales Company (November 12th, 1937), such mortgage was assigned for a valuable consideration to the plaintiff, Finance Company, and on May 25th, 1938, a certificate of title was issued to the Northside Auto Sales Company, and the mortgage of plaintiff was noted thereon. It is by reason of the default in the payment of this chattel mortgage that plaintiff claims the right to possession of the automobile in question.

The defendant Albert Unsinger, resists the claim to possession by reason of a sale to him by the Northside Auto Sales Company under date of May 23rd, 1938. At this time, the Northside Auto Sales Company gave Unsinger possession of the automobile and Unsinger paid $600 to the Sales Company on May 25th, 1938. Unsinger never at any time received either a bill of sale or certificate of title.

His defense to the replevin action is predicated upon his possessing the automobile, and the fact that he paid to the Sales Company a substantial portion of the purchase price. The weakness of his position is developed in the certificate of title law, which became effective January 1st, 1938. He is bound by its provisions.

This act (§6290-4 GC) provides in part as follows:

"No person acquiring a motor vehicle from the owner thereof, whether such owner be a manufacturer, importer, dealer or otherwise, hereafter shall acquire any right, title, claim, or interest in or to said motor vehicle until he shall have had issued to him a certificate of title to said motor vehicle, or delivered to him a manufacturer's or importer's certificate for the same; nor shall any waiver or estoppel operate in favor of such person against a person having possession of such certificate of title or manufacturer's or importer's certificate for said motor vehicle for a valuable consideration. No court in any case at law or in equity shall recognize the right, title, claim, or interest of any person in or to any motor vehicle, hereafter sold or disposed of, or mortgaged or encumbered, unless evidenced by a certificate of title or manufacturer's or importer's certificate duly issued, in accordance with the provisions of this chapter."

The weakness of plaintiff's position is that, as far as the record shows the original mortgagor, Munday, never had separate and distinct possession of the automobile. We are not unaware of the holding in **Commercial Credit Co. v Schreyer, 120 Oh St 568.** The second paragraph of the syllabus is:

"These sections declare it to be unlawful to sell or give away a motor vehicle unless at or before such sale or gift the seller shall execute and deliver a bill of sale therefor, and prescribe other procedure in perfecting transfer of title. They do not declare the contract itself to be unlawful if executed in a manner other than that prescribed."

This authority is inapplicable, for the reason that Munday never was given anything which would evidence a title in him separate from that of the partnership, and his possession of the automobile as an individual was indistinguishable from the possession of the partnership.

Neither the original mortgagee or their assignee, the plaintiff, could have any better title or greater █ right to possession than **the original mortgagor.** He could only encumber such interest or right as he possessed and only such interest or right could be assigned to plaintiff.

In 23 R. C. L., p. 866, it is stated:

"The law seems to be well settled that the plaintiff in a replevin action must recover on the strength of █ his own title or right of possession, and not on the weakness of his adversary's, and unless he shows such title or right to possession the defendant, even though without title or right to possession, will not be compelled to deliver the property. The real test then as to whether an action can be maintained turns upon the question whether the plaintiff is, at the time of the institution of the suit, entitled to the immediate possession of the property claimed."

We are unable to say that the trial court was not correct in finding that the plaintiff had failed to show a right to immediate possession of the automobile.

The judgment is affirmed.

HAMILTON, PJ., concurs.
MATTHEWS, J., dissents in seperate memorandum.

MATTHEWS, J. (Dissenting):

It seems clear to me that when Munday, at a time prior to the certificate of title law, executed the promissory note and the mortgage securing it, in which the Northside Auto Sales Company was the payee and mortgagee, and the latter then assigned the instruments to the plaintiff for a valuable consideration, the transaction gave to the plaintiff, as between the parties, a lien upon the automobile in accordance with the terms of the mortgage, as effectually as a mortgage executed by the Northside Auto Sales Company, as mortgagor would have done. Of course, that lien would not have been valid as against a bona fide purchaser from the mortgagor in possession.

But the certificate of title law became effective while the mortgagor still had possession and the record title. It could transfer the title free of the mortgage lien to an innocent purchaser for value, but to do so, it was necessary that the method prescribed by the then applicable law—the certificate of title law, was followed. The pertinent sections of that law are quoted in the majority opinion. It will be seen that the plaintiff complied with that law after it became effective, and that the defendant never complied with it. Had the defendant insisted upon compliance before paying, the plaintiff's mortgage would have been disclosed, and no one would have suffered loss. He did not do so. The law expressly and positively declares where the loss shall fall under such circumstances, and takes it from the power of the courts to shift the loss because of any inequities that may exist or be supposed to exist. It provides that: "No court in any case at law or in equity shall recognize the right, title or interest of any person * * * unless evidenced by certificate of title", etc.

It seems to me that in denying the plaintiff's title, evidenced by a certificate of title, as required by law, in favor of the defendant, who has made no pretense of complying with it, the court is not performing the judicial function of interpreting and applying the law.

That this certificate of title law makes the certificate a sine qua non of a title was decided in **Crawford Finance Co. v Derby, 16 OO 285, 63 Oh Ap 50.**

In my opinion, the majority opinion in the case at bar is not in accord with either the letter or spirit of this law.